NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

INGE ANDERSON,

     Plaintiff-Appellant/Cross-Appellee,

v.

SCOTT ANDERSON,

     Defendant-Appellee/Cross-Appellant.

Nos.  19-36000
        20-35223

D.C. No. 2:17-cv-00891-RSL

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted November 20, 2020
Seattle, Washington

Before:  GOULD and FRIEDLAND, Circuit Judges, and OTAKE,[**] District Judge.

Inge Anderson ("Inge") appeals several of the district court's rulings during

and after a trial in which the jury entered a verdict in Inge's favor on her breach of

contract claim, which was premised on her ex-husband Scott Anderson's ("Scott")

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Jill A. Otake, United States District Judge for the District of Hawaii, sitting by designation.

failure to satisfy his financial sponsorship obligations to her under his Form I-864, Affidavit of Support. We affirm in part, reverse in part, and remand for recalculation of damages.

Scott cross-appeals the district court's order dismissing his affirmative defenses (res judicata, fraud in the inducement, violation of public policy, lack of legislative intent/standing, vagueness and lack of specificity, and waiver) and his counterclaim for misrepresentation. We decline to consider his cross-appeal because it is predicated on the granting of a new trial.[1]

As the parties are familiar with the facts, we do not recount them here.

A.    Trial Rulings

1.    Jury Instruction No. 14

Scott's financial obligation to Inge under the I-864 is reduced by any income Inge receives during the support period. *See Erler v. Erler*, 824 F.3d 1173, 1178 (9th Cir. 2016). Inge argues that the district court erred in instructing the jury that in addition to wages and cash payments, her "income" includes "property, services, gifts, or educational grants" and "constructively-received income." She contends

---

[1] Inge also moves to strike portions of Scott's briefs for failure to raise issues below and to cite to authorities and for responding a second time to the primary appeal in his Reply Brief to the cross-appeal. Because the arguments at issue do not affect the disposition of the appeal or cross-appeal, the motions are denied as moot.

that this instruction caused her damages award to be offset by items that were improperly treated as income—a judgment against her for Scott's attorney's fees in their divorce proceeding, TRICARE health insurance benefits, and an educational grant. We review a district court's formulation of civil jury instructions for an abuse of discretion but consider de novo whether the challenged instruction correctly states the law. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). We do not reverse if any error relating to the jury instructions was harmless. *See id.* "Harmless error review for a civil jury trial . . . shifts [the burden] to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Id.* (alterations in original) (citation omitted).

The definition of "income" presented in Instruction No. 14[2] was overbroad and the error was not harmless because non-income—specifically, the judgment

---

[2] Instruction No. 14 defined income as follows:

> "Income," for purposes of determining plaintiff's income and whether defendant provided the support necessary to maintain plaintiff's income at the federal poverty level, includes not only wages and cash payments, but also property, services, gifts, or educational grants received by plaintiff (unless she paid fair market value for those items). "Income" also includes constructively-received income, such as payments to third-parties on plaintiff's behalf that plaintiff would otherwise have had to pay directly. "Income" does not include any loans that plaintiff will have to pay back, such as cash advances on a credit card or student loans.

3

for attorney's fees and TRICARE health insurance benefits—offset Inge's damages award. And Scott has not demonstrated that it is more probable than not that the jury would have reached the same verdict regarding damages had it been properly instructed. We recognize the lack of precedential authority defining "income" in this context. Nevertheless, establishing a uniform definition is unnecessary to resolve this appeal and we decline Inge's invitation to restrict "income" to the definition set forth in 8 C.F.R. § 213a.1.

By defining income as "constructively-received income," the instruction permitted the inclusion of TRICARE benefits as part of Inge's income and was therefore erroneous. The health insurance benefits Inge received through Scott's TRICARE coverage were not income because Scott did not pay an enrollment fee and he should not receive a windfall at Inge's expense.[3] *See Erler*, 824 F.3d at 1179.

Similarly, the overbreadth of the instruction resulted in the jury offsetting Inge's damages by the amount of the judgment for attorney's fees, which she still

---

[3] This differs from a situation where an immigrant obtains means-tested public health insurance benefits, which may constitute income because the state providing the benefits could seek reimbursement from the sponsor.

4

owes Scott.[4] Scott did not provide evidence that he has forgiven the debt arising from the judgment. Therefore, permitting this judgment to constitute income could result in an improper windfall to Scott were he to successfully collect the judgment.

The instruction's inclusion of "educational grants received by plaintiff" was not erroneous. To the extent Inge's educational grant covered her tuition and did not require repayment, it was income because it allowed her to put money she would otherwise use for tuition to other uses.

Because Inge's income erroneously included TRICARE benefits and the judgment for attorney's fees, the jury miscalculated damages.[5] Thus, although a jury award of damages is ordinarily accorded "great deference" and will be upheld "unless it is 'clearly not supported by the evidence' or 'only based on speculation or guesswork,'" *Williams v. Gaye*, 895 F.3d 1106, 1128 (9th Cir. 2018) (citation omitted), the award of damages must be reversed. Insofar as the error was limited

---

[4] Although it is unclear what phrase in the instruction the jury relied on to categorize the judgment as income, we presume it followed the instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 901 (9th Cir. 1997).

[5] The jury accepted Scott's testimony regarding Inge's income and the financial support he provided to her from mid-2011 to mid-2019 and calculated damages accordingly. The damages verdict reconciled the difference between Scott's support plus any income Inge received each year and the federal poverty guidelines for that year. Where income plus support fell below the federal poverty guidelines, the jury awarded damages: $2,868 for 2016 and $7,286 for 2019.

5

to the damages verdict, the liability verdict is affirmed. The matter is remanded for recalculation of damages to include in the damages award the amount attributed to the TRICARE benefits and judgment for attorney's fees.

2.    Rebuttal Testimony

Inge challenges Joseph Sousa's testimony as a rebuttal witness, arguing that the district court erred by reversing course on an earlier ruling prohibiting Scott from calling any witnesses other than himself and by failing to engage in the requisite legal analysis before doing so.[6] We review the district court's evidentiary rulings for abuse of discretion. *See Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016). "Errors will only support reversal if the error was prejudicial, or in the civil context, 'more probably than not tainted the verdict.'" *Wilkerson*, 772 F.3d at 838 (citation omitted).

District courts are "vested with 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.'" *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996), *as amended* (Jan. 15, 1997) (citation omitted). This includes the admission of rebuttal evidence. *See id.* Because Inge's testimony discussed events of which Sousa had direct knowledge, the

---

[6] Inge also argues that the district court violated Western District of Washington Local Civil Rule 7(h)(3) by not giving her an opportunity to respond to Scott's motion to call Sousa. But this rule concerns motions for reconsideration only, *see* Local Rules W.D. Wash. LCR 7(h)(3); Scott's motion was not styled as one for reconsideration, nor is there any indication the court construed it as such.

6

district court allowed Sousa to testify as a rebuttal fact witness despite its earlier ruling. "[I]nterlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment." *Id.* at 1515 (citation omitted). The district court thus acted well within its discretion when permitting Sousa to rebut Inge's testimony.

Neither did the district court abuse its discretion by failing to expressly cite our multi-factor test for when a previously undisclosed witness may be permitted to testify. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1139 (9th Cir. 2006). Each of the four *Reno* factors was satisfied here. Because Inge first mentioned the events Sousa testified to during her own testimony and was given three days' notice of his appearance, she did not suffer prejudice or surprise; even if she had, her thorough cross-examination cured any potential prejudice. *See id.* There is no indication in the record that Sousa's testimony disrupted the proceedings, nor is there evidence to suggest that Scott acted in bad faith. *Id.* We do not second guess the district court's exercise of its broad discretion to allow Sousa's rebuttal testimony.

### 3. Self-Prepared Spreadsheet

Inge contends that the district court abused its discretion by permitting Scott to testify using a self-prepared summary of the income and benefits she received from 2011 to 2019, in violation of Federal Rule of Evidence ("FRE") 1006. The

rule authorizes the use of summaries and charts "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006.

FRE 1006 is inapplicable because the district court did not admit the spreadsheet Scott relied on as a testimonial aid, nor does the record indicate that the spreadsheet was published to the jury. Inge had an opportunity to cross-examine Scott and the district court instructed the jury that it could decide whether to believe all, part, or none of the witnesses' testimony. Further, Inge has not persuasively argued that she was prejudiced by any evidentiary error related to Scott's spreadsheet or his testimony on it.

B.      Motion for a New Trial

Inge argues that the district court should have granted her motion for a new trial because defense counsel made derogatory comments about her; vouched for Scott; offered personal opinions regarding Inge's credibility; referred to defense counsel's former experience as a prosecutor; and emphasized the "unfair" nature of the I-864, allegedly to encourage the jury to nullify controlling law. We review a district court's denial of a motion for a new trial for clear abuse of discretion. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1005 (9th Cir. 2004).

Where, as here, Inge did not contemporaneously object to nearly any of the statements she now challenges, review is for plain or fundamental error. *See Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 517 (9th Cir. 2004); *Draper*, 836 F.3d at 1084–85. Plain error review in the civil context requires: "(1) an error, (2) the error is plain or obvious, (3) the error was prejudicial or [a]ffects substantial rights, and (4) review is necessary to prevent a miscarriage of justice." *Draper*, 836 F.3d at 1085 (alteration in original) (citation omitted). "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault envisioned by the standard set forth above." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (citation omitted). Thus, reversal is only appropriate in extraordinary cases. *See Draper*, 836 F.3d at 1085.

Here, defense counsel's conduct did not amount to plain error warranting reversal. Although defense counsel's statements about Inge evoked antiquated and harmful stereotypes about women, they did not affect the verdict. Inge prevailed on her breach of contract claim, and the adverse verdict on her intentional infliction of emotional distress claim was likely attributable to a lack of evidence that Scott acted outrageously. Even counsel's isolated statement about Inge's credibility, while clearly erroneous, was not plain error because Inge did not make a concrete showing of prejudice resulting from the statement, and the jury was instructed that counsel's arguments and statements were not evidence.

9

Accordingly, the district court did not abuse its discretion in denying Inge's motion for a new trial.

C.      <u>Cross-appeal</u>

Because we do not grant a new trial, it is unnecessary to address the issues on cross-appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.